### Henry Ades Fowler, Administrator, Plaintiff in Error, v. D. F. Crilly, Defendant in Error.

### Gen. No. 18,689.

1. LANDLORD AND TENANT, § 226*—*duty of owner of tenement building to maintain building in safe condition.* A landlord who rents different parts of his building to various tenants, reserving the elevators, halls, stairways and other approaches, or other parts of the building for the common use of his tenants, is under an implied duty to use reasonable care to keep them in reasonably safe condition, and is liable for injuries to persons lawfully in the building, resulting from failure to perform that duty.

2. LANDLORD AND TENANT, § 230*—*when liability of landlord for defective porch landing question for jury.* In an action against the owner of a tenement building for the death of a child of a tenant resulting from a rotten board on a porch landing giving away so that the child fell to the ground below, *held* that the evidence tended to show defendant was liable and that the court erred in refusing to allow the case to be submitted to the jury.

3. NEGLIGENCE, § 96*—*when contributory negligence not chargeable to a child.* A child of three and one-half years old is not chargeable with contributory negligence.

Error to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and remanded. Opinion filed June 24, 1914.

I. W. FOLTZ, for plaintiff in error.

CASSODAY, BUTLER, LAMB & FOSTER, for defendant in error.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE DUNCAN delivered the opinion of the court.

This writ of error is prosecuted by the administrator of the estate of Margaret T. Beard, deceased, to reverse a judgment in favor of the defendant in error, D. F. Crilly, in a suit in case by the former against the latter for damages for wrongfully causing the death of his intestate. The judgment was entered upon a directed verdict at the close of the evidence for plaintiff in error, and the sole question here is as to whether or not the court erred in refusing to allow the cause to be submitted to the jury.

The facts proved on the trial are, in substance, that defendant in error owned a tenement building located on the northeast corner of North Park avenue and Eugenie street, Chicago with two entrances, 629 and 631 North Park avenue. The building fronts west on the avenue forty-four feet, and extends east along Eugenie street sixty feet, is four stories high, and contains on each story two flats running the full length of the building. In the rear of each story is a porch the full width of the building. Just east of the center of the porches is a wooden framework consisting of four large upright posts about forty feet high, supporting three platforms or landings just opposite the midway lines in the first, second and third stories of the buildings, or just opposite the half distance between the first and second, the second and third, and the third and fourth porch floors, said landings being about seven feet wide and extending in length about twelve feet east to or near an alley. The four porches and the three landings or platforms were connected by the only stairway in the rear of the building, and beginning at the top, the stairway runs east and downward from the porch on the fourth floor to the northwest corner of the third platform just below, and thence from the southwest corner of the third platform west and downward to the porch on the third

story, and the stairway in like manner connects the third porch and the second landing with the second porch, and the second porch and the first landing with the porch on the first floor, there being four steps between each landing and the porch above it and four steps between each landing and the porch below it. Railings or banisters were constructed around all said porches, the stairs and landings, the railing around the landings being about three feet high and consisting of three boards nailed to the large upright posts in the four corners and to an upright stay midway between said posts. In the northeast corner of said landings there is constructed a garbage chute consisting of an iron pipe extending from the top landing to a large garbage box on the ground under the east end of the landings. There are two partitions about six feet high on each of said porches, located a few inches north and south of the places where said stairway joins said porches, and extending from the rear banisters of the porches to the rear wall of the building, and in each partition there was a door with a lock, and when closed gave the tenants in every north and south flat a private porch connected with a common space leading to the stairway. The various tenants in said building deposited their garbage into the garbage chute which conveyed the garbage to the box below, and used the landings in common for cleaning rugs, beating carpets, and for stringing clotheslines and hanging out clothes, and used the stairway in common for said purposes and for ingress and egress to and from the building to the yard and street below. The evidence also discloses that defendant in error repaired the stairway and landings, and does not disclose any other use that was made of them other than as above recited. The tenants in the fourth flats, including the parents of the deceased, used the top landing in common with the tenants in the third flats for the uses aforesaid, and the tenants in the first and second flats used the first platform in the same manner,

the tenants in the second and third flats using the landing just above or below them as they chose. The parents of the deceased had been tenants there of defendant in error since 1904 up to September 12, 1907, the day of the child's death, and occupied the south flat on the fourth floor with one Mrs. Hardy, who on said latter date went out and down to said third landing to hang out some clothes on the clothesline there. She had just arrived at the east end of the landing when the deceased, about three and one-half years old and who had followed Mrs. Hardy, leaned on the middle board that formed the east railing to look down to the alley below at some fruit venders there, and while standing on the floor of the landing and so looking said board gave way, and the child fell through the railing and down to the alley about thirty-five feet, and received injuries from which she soon thereafter died. The child's presence was not known to Mrs. Hardy until she heard the noise of the board as it was torn from the posts, and the child was in the act of falling. The door to the south partition on the porch had been habitually kept closed by the parents so the child could not, when alone, pass through there, by means of the lock, and also by means of a hook and staple which they themselves had placed high on the door as an extra precaution against the child's going through there. The child's presence on the landing was not known to her parents. Her mother was in the kitchen ironing and did not know Mrs. Hardy had gone down to the landing, and did not see the child follow; but she very shortly afterwards missed it and called it, and not getting an answer, ran to the door to see where it was just in time to hear the crash and a scream as the child fell. The father was in the sitting room and knew nothing of the occurrences. The board that was so torn loose was so much decayed at the ends and around the nails that the nails were pulled right through it by the leaning of the little child against it, and were left sticking in the post. The at-

tention of the defendant in error's agent who had charge of the building had often been called to the decayed and shaky condition generally of the landing prior to said death, and in response to a notice by the mother of the deceased of the decayed and shaky condition of the landing, the agent had had some repairs made on said landing near the stairway thereon shortly before said death. The evidence further showed that children of other tenants in that building had been accustomed to play on said landings and particularly the landing in question.

An appropriate declaration was filed in the case, charging the proper ultimate facts, and that the child lost its life by reason of defendant in error's negligence in failing to use reasonable care to keep the said landing and stairway in reasonably safe condition, to which the general issue was filed.

A landlord who rents different parts of his building to various tenants, reserving the elevators, halls, stairways and other approaches or other parts of the building for the common use of his tenants, is under an implied duty to use reasonable care to keep them in reasonably safe condition, and is liable for injuries to persons lawfully in the building, resulting from a failure to perform that duty. *The B. Shoninger Co. v. Mann*, 219 Ill. 242; *Burke v. Hulett*, 216 Ill. 545; *Payne v. Irvin*, 144 Ill. 482; *Schwandt v. Metzger Linseed Oil Co.*, 93 Ill. App. 365; *Stromberg v. Western Tel. Const. Co.*, 86 Ill. App. 270.

The evidence showed clearly in this case that defendant in error retained the use of the stairway and the landing in question for the common use of the tenants in the third and fourth flats, including the parents of the deceased, and that they were specially built and repaired by him for the common uses of his said tenants, as above recited. There can be no question about his duty to the tenants and all persons lawfully on said landing to keep it, including its banisters, in reasonably safe

condition. The evidence also tends to show that the
third landing was dangerous by reason of the rotten
and decayed board aforesaid, and that defendant in
error had been notified of the general shaky and dan-
gerous condition of the landing, and that his carpenter
was sent there shortly before the death of the child
to repair it, and that he did make some repairs near
the stairway on that landing. In view of that fact
and the further fact that the board was so very rotten
that the leaning of the little child of about thirty-five
pounds weight pulled the nails through the ends of the
boards, we think the evidence tended to charge defend-
ant in error with notice of the defect, and that rea-
sonable inspection would have given actual notice to
his carpenter who repaired the landing, as was sim-
ilarly held in *Clarke v. Welsh,* 93 App. Div. (N. Y.)
393.

Under the evidence it was a question for the jury to
decide as to whether or not the parents or either of
them were guilty of contributory negligence, and the
child was not in charge of Mrs. Hardy. A child of
three and one-half years old is not chargeable with
contributory negligence. *Chicago City Ry. Co. v.
Tuohy,* 196 Ill. 410; *Same v. Wilcox,* 138 Ill. 370;
*Ohnesorge v. Chicago City Ry. Co.,* 259 Ill. 424.

The cause should have been submitted to the jury.
It is error for the trial court to direct a verdict for
the defendant where there is evidence tending to prove
all the material averments of a declaration stating a
good cause of action. *Union Bridge Co. v. Teehan,*
190 Ill. 374; *Libby, McNeill & Libby v. Cook,* 222 Ill.
206.

As the landing and stairway were built expressly
for the building in question and for the common use
of the tenants or occupants aforesaid, the child was
rightly on the premises, and was not a trespasser, in-
truder or bare licensee. The cases cited by defendant
in error are not applicable to this case, towit: *Mc-
Dermott v. Burke,* 256 Ill. 401; *Gibson v. Leonard,* 143

Ill. 182; *Seymour v. Union Stock Yards & Transit Co.*, 224 Ill. 579; and *Saffer v. Molter*, 124 Ill. App. 21.

As was said in *Widing v. Penn. Mut. Life Ins. Co.*, 95 Minn. 279, defendant in error was bound to contemplate all ordinary and reasonable purposes for which the landings might be used. It was also but reasonable to suppose that children would go upon these landings to play and to look about over the city; and they did go there to play and there were no regulations or restrictions against them doing so, and they were as much entitled to protection against such dangers as the deceased encountered as they would be if on the common stairway, or on their common porch, and being rightfully there, it can make no difference in this case that the child was leaning against the board in question and looking down at the fruit venders to gratify its childish curiosity.

The judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*